UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

TERRANCE MARTEZ FLETCHER,

Defendant.

______________________________/

Case No. 16-20336

SENIOR UNITED STATES DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE R. STEVEN WHALEN

**ORDER DENYING AMENDED MOTION TO SUPPRESS [15]; DENYING AS MOOT MOTION TO SUPPRESS [14]**

Defendant is charged in a ten count indictment with three counts of felony possession of a firearm, three counts of possession of a stolen firearm, two counts of felony possession of ammunition, and one count each of possession of fraudulent documents with intent to defraud and fraud activity in connection with access devices. Defendant filed a Motion to Suppress [14] on August 18, 2016. Defendant filed an Amended Motion to Suppress on August 22, 2016 [15][1], seeking to suppress evidence seized from two vehicles belonging to Defendant's

[1] The original Motion to Suppress and the Amended Motion to Suppress are virtually identical aside from the inclusion of two exhibits in the Amended Motion. Therefore, the Court considers the merit of the Amended Motion in this Order and finds the original Motion to Suppress moot.

fiancé and mother, based on an insufficient warrant. The Government responded on September 6, 2016 [18]. For the reasons stated below, Defendant's Amended Motion to Suppress [15] is **DENIED** and Defendant's Motion to Suppress [14] is **DENIED as moot.**

## FACTUAL BACKGROUND

On Friday, February 19, 2016, Investigator Jonathan Hugle of the Michigan Department of Corrections' Absconder Recovery Unit arrived at Defendant's home to arrest him for a parole violation.[2] After Defendant was handcuffed, Investigator Hugle, pursuant to MCL 791.236(19), began to search Defendant's home, which he shares with his fiancé, Janee Byrd. This search uncovered the following:

- Five rounds of 44 caliber ammunition
- One round of 38 special ammunition
- One round of 9mm ammunition
- Seven rounds of 380 ammunition with magazine
- 3 social security cards
- $14,817 U.S. currency
- Mail
- Fraudulent driver's licenses
- Smith & Wesson, 40 caliber semi-automatic pistol- loaded with 7 rounds
- Holster
- Double Magazine holder
- A blank, unissued SOS Michigan vehicle title

[18 at 2].

---

[2] Defendant is currently serving two years for his parole violation.

During Investigator Hugle's search of the house, Michigan State Trooper Raymond Rollet from the Down River Area Narcotics Organization (DRANO) arrived to assist Investigator Hugle. He was apprised of what Hugle had already unearthed in his search. According to the affidavit, Trooper Rollet found two sets of car keys hanging by the door inside the house. Trooper Rollet went outside and pressed the unlock buttons on the keys until he found the cars, a Dodge Challenger and a Chrysler 300. According to the warrant affidavit, Trooper Rollet asked Byrd about the vehicles, and she responded that the Challenger was driven by Fletcher despite being titled to Defendant's mother, while the Chrysler 300 was owned by Byrd. Trooper Rollet requested permission from Byrd and Defendant's Mother to search the cars, but consent was not given.

Additional DRANO officers arrived and assisted Trooper Rollet in securing and processing the items removed from Defendant's house. Trooper Rollet then informed Byrd that the two cars would be impounded, and that they would be seeking a search warrant for the vehicles. The cars were removed by a towing company and taken to their yard to be held pending a search warrant. Rollet indicated in his report that the cars were seized to prevent the destruction of possible evidence.

Per his incident report, Rollet believed that there was probable cause that Defendant and/or his fiancé were involved in identity theft and in possession of a stolen gun, and that additional evidence would be found in the cars because:

- Defendant's mother was untruthful concerning the residence and the large amount of money found;
- Defendant's mother was untruthful concerning her employment as a UBER driver, and that the stolen gun found in the house must belong to a customer who left the gun in the car;
- Defendant had a fake driver's license, which suggested he was attempting to elude law enforcement or other's concerning his actual identity;
- Stolen social security cards belonging to three others, and two reloadable debit cards were found in upstairs area of the house;
- A scanner, but no computer, was found in the house;
- Defendant has an "unknown job," and his girlfriend is an out of work dancer, which raises an inference that the money found was proceeds of criminal activity, specifically identity theft;
- No pay stubs or tax forms were found in the house;
- Various rounds of ammunition were found in the house, along with another gun magazine, which were not consistent with the 40 caliber weapon recovered;
- Both vehicles were paid off, uncommon for a man recently paroled and living with an unemployed woman.

[18 at 4].

On Monday, February 22, 2016, the towing company in possession of the seized cars contacted Rollet. He was informed that, during a routine inventory search of the car, they observed a pistol, in plain view, in the trunk of the Chrysler 300. Search warrants were approved by Wayne County AP Reagan Lake and

signed by the 23rd District Court Judge. In the affidavit, Rollet stated in support of the warrant application that:

> Affiant believes even without Martin's Towing location of the pistol, that there is probable cause to believe that additional evidence will be located in both vehicles, as both Byrd and Fletcher live in the residence where a stolen firearm, items of identity theft, and a large amount of suspicious cash was located and these vehicles were both parked in front of the residence. The Challenger, per Byrd, is Fletchers, and the 300, per Byrd, is hers and is registered to her.

[18-1 at Pg ID 136].

On February 22, 2016 the cars were searched. In the Dodge Challenger, the following was recovered:

- one model SRC9, semi-automatic 9mm pistol (stolen);
- license plate for Chrysler 300 vehicle;
- documents in the name of Defendant- title and driver's license;
- $128 in U.S. currency.

[18 at 5]. From the Chrysler 300, the following was recovered:

- ak-47 rifle, RMC;
- ammunition;
- one ruger magnum silver revolver;
- One (1) Bulldog Pug Five Shot silver revolver;
- One (1) Smith & Wesson silver 10 shot semi-automatic pistol;
- One (1) Glock Gen4, 40 caliber pistol with extended magazine; (stolen)
- One (1) Walter PK380, semi-automatic pistol;
- One (1) Taurus, 45 caliber semi-automatic pistol, Millennium Model;
- Flight bag with the name "Fletcher" on a tag;
- Credit card skimmer;
- Credit card writer;
- Baggy of marijuana; and,

- Women's clothing, paperwork with girlfriend's name.

[18 at 5-6].

## ANALYSIS

In the Motion to Suppress, Defendant only challenges the seizing of the two vehicles and the search of the two vehicles that led to the recovery of the contraband listed above. Defendant predicates his Motion to Suppress on an absence of probable cause. He argues that Rollet's affidavit and evidence do not establish a nexus between the cars that were searched and the evidence of criminal activity. Specifically, Defendant claims that at the time of the initial seizure of the vehicles and in the warrant, there was not a "'substantial basis' to conclude with particularity that the vehicles contained evidence of criminal activity." [15 at 5]. Rather, Defendant argues that the evidence and the warrant affidavit demonstrate that the officer made a guess that there would be evidence located in the car, without any reasonable connection between the Defendant, the criminal activity, and the cars to support his supposition.

### 1. PROBABLE CAUSE DID NOT EXIST TO SEARCH THE VEHICLES

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In deciding if an affidavit establishes probable cause,

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004), quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (internal quotation marks and alterations omitted). For probable cause to search a particular location to exist, there must be a "nexus between the place to be searched and the evidence sought." *Carpenter*, 360 F.3d at 594 (6th Cir. 2004), quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir.1998). The affidavit must show "reasonable cause to believe that contraband sought will be found in the property to be searched." *United States v. Sneed*, 385 Fed. Appx. 551 (6th Cir. 2010), citing *United States v. Brooks*, 594 F. 3d 488, 492 (6th Cir. 2010). A Court can infer a nexus based on the type of the evidence being sought and the offense that the Defendant is suspected of having committed. *Id*.

The Government argues that probable cause existed to seize the vehicles to prevent destruction of evidence, and later to search the vehicles for that evidence, when a Magistrate signed a search warrant for the two vehicles. It argues that, based upon the evidence obtained from the shared home of Defendant, Rollet believed that additional evidence of identity theft, and devices used to commit identity theft, would be in the cars. Also, because various rounds of ammunition were found in the house which did not fit the stolen gun that was recovered there, he believed, per his incident report, that seizing the vehicles likely would reveal another gun, and thus the cars were appropriately seized to prevent destruction of possible evidence while awaiting a search warrant.

The Court agrees with the Defendant that there is not a sufficient nexus between the two vehicles and evidence of the crime of possessing a stolen firearm and identity theft. There is no indication within the affidavit as to why evidence of the crime was likely to be found in the two cars.

The Government cites *United States v. Sneed* for the proposition that a sufficient nexus has been established by the affidavit. 385 Fed. Appx. 551 (6th Cir. 2010). However, that case is easily distinguished from the present facts. In *Sneed*, the Defendant was charged with aiding and abetting armed bank robbery. The Court found that an adequate nexus had been provided, based on the following

facts contained in the affidavit: (1) Defendant did not have a permanent address, so it was likely that contraband from a robbery would be kept in the car; (2) the car was registered to Sneed, and the vehicle was discovered at a location where the Defendant was "known to have been only moments before the vehicle's discovery;" (3) Defendant intentionally attempted to "disassociate himself from the vehicle and its contents;" and (4) Defendant had a known history of keeping instrumentalities from robbery in vehicles. *Id* at **6. These facts established probable cause to believe that evidence would be found in the car.

    In this case, the affidavit only states that there is a nexus because "both Byrd and Fletcher (sic) live in the residence where a stolen firearm, items of identity theft, and a large amount of suspicious cash was located and these vehicles were both parked in front of the residence." [18-1 at 3]. While it is undisputed from the affidavit that Defendant had access to these cars and used them, there are no supporting facts suggesting that any evidence would be found in these cars. The Government points to the fact that there was evidence that seemed to be missing, based on the contraband found in the search of the house, however an absence of evidence found does not translate to probable cause providing the police blanket authority to search any location nearby the house of Defendant without some

acceptable reason supporting a link between the crime and a possibility of finding the evidence sought in the location to be searched.

### 2. THE *LEON* GOOD FAITH EXCEPTION APPLIES IN THIS CASE

A finding of no probable cause does "not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.2005). Under the good faith exception, the inquiry is limited to "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances ... may be considered." *United States v. Leon*, 468 U.S. 897, 922–23, n. 23, 104 S.Ct. 3405. (1984). Defendant argues that the good faith exception does not apply because "the affidavit is so lacking in probable cause that a belief in its existence is objectively unreasonable." *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) citing *Laughton*, 409 F. 3d at 748; [15 at 19-21]. For *Leon* to apply in this case, the affidavit must contain:

> a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause.

*United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004).

Defendant draws the Court's attention to *United States v. McPhearson*, 469 F. 3d 518 (6th Cir. 2006) to support his argument that the affidavit at issue does not contain any information supporting a finding that there is a nexus between the crimes alleged and the vehicles that were seized and searched. In *McPherson*, the Court found that the good faith exception did not apply. However, this case is factually distinct from the facts at hand. *Id* at 526. In *McPherson* the Defendant was arrested at the door of his house on a warrant for simple assault. *Id* at 520. During the subsequent pat-down, crack cocaine was found in Defendant's right front pocket. *Id* at 520-521. Defendant denied consent to search the house so the officer sought a search warrant to perform the search. *Id.* The Court found that the search warrant was predicated upon a bare bones affidavit and lacked evidence to establish a nexus between the crime and the location of the house containing evidence. In attempting to establish a nexus, the affidavit: (1) did not establish that the Defendant was known to have previously participated in the type of criminal activity that the police were investigating; (2) did not allege that the Defendant was involved in drug dealing, or that there was any indication that further evidence of drugs were likely to be found based upon the amount found on Defendant's person; (3) and the house was merely identified as his residence. *Id* at 526-27. This was considered to be "so vague as to be conclusory or meaningless" and therefore not a

valid case in which to employ the good faith exception. *Carpenter*, 360 F. 3d at 596.

In this case, the affidavit is not bare bones. The affidavit alleges that there was a stolen pistol found, as well as "various types of ammunition," social security cards issued to various individuals, and a fake Michigan Identification card. [18-1 at 3]. According to the affidavit, the keys to the car were found hanging near the door, and the cars were located parked by the house. Bryd stated that the cars belonged the Defendant and herself, and the affidavit further asserted that probable cause existed that additional evidence could be found in the cars because of their location, the fact that the owners of the cars lived in the house where they were found, and the discovery of the contraband in the house. This information is sufficient to support Rollet's good faith belief in the warrant's validity. *See e.g. Carpenter*, 360 F. 3d at 596 (court held that an affidavit which noted that marijuana was growing near the residence that was searched, and that there was a road connecting the residence and the marijuana plants, was sufficient to meet the good faith standard). The affidavit explains the connection between the Defendant and the vehicles, connects the cars to the house in terms of proximity, and lists the contraband found in the house, including a stolen firearm and various types of ammunition that do not match the stolen firearm as well as various identify theft

evidence. The affidavit thus satisfies the good faith exception standard of establishing a minimally sufficient nexus between the illegal activity and the place to be searched to support the officer's good faith belief in the warrant's validity. *Id*.

Therefore, the seizure of the vehicles under MCL 257.252d, which provides that a vehicle can be immediately removed from public or private property to a place of safekeeping "if the vehicle must be seized to preserve evidence of a crime, or if there is reasonable cause to believe that the vehicle was used in the commission of a crime," and the subsequent search of the vehicles is valid under the good faith exception.

**IT IS ORDERED** that Defendant's Amended Motion to Suppress [15] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress [14] is **DENIED as moot.**

**SO ORDERED**.

s/Arthur J. Tarnow

Arthur J. Tarnow
Senior United States District Judge

Dated: October 27, 2016